IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METRO AUTO SALES | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALFRED STEIN, INC. | : | NO. 05-4721 |
| | : | |
| Defendant. | : | |

Baylson, J.                                                                          January 30, 2006

**MEMORANDUM**

## I. Introduction

This case involves a dispute concerning an asset purchase agreement between the parties. Plaintiff MetroAuto Sales, Inc. ("Plaintiff" or "Metro") entered into a contract with Alfred Stein, Inc. ("Defendant" or "Stein"). In this suit, Metro seeks damages for both breach of contract and fraud. An amended complaint was filed on October 13, 2005.

Presently before the Court is Defendant's Rule 12(b)(6) Motion to Dismiss the Amended Complaint (Doc. No. 5). For the reasons that follow, the Court will grant the Motion to Dismiss.

## II. Background

### A. Procedural Background

Plaintiff Metro filed its original complaint on August 31, 2005 alleging both breach of contract and fraud. Plaintiff filed an amended complaint on October 13, 2005. On October 31, Defendant filed its Motion to Dismiss, and Plaintiff filed a Response on November 10.

1

### B. Allegations in the Amended Complaint

According to the amended complaint, Metro and Stein entered into an asset purchase agreement (the "Agreement") on November 19, 2004. The Agreement stated that Stein would purchase certain assets from Metro to be used in the operation of a Kia and Suzuki dealership in Coatesville, Pennsylvania. At this point, Stein paid Metro, through its escrow agent, a total of $167,500 as part of the execution of the Agreement. On the same date, Plaintiff alleges that Stein entered into a Real Estate Agreement of Sale with Newbourne, LLC, in which Stein agreed to purchase property located in Coatesville contemporaneous with the purchase of certain assets from Metro. Plaintiff claims that at some point after November 19, 2004, Stein stopped payment on the check it had written to Metro. On December 8, 2004, Stein communicated its desire to terminate the Agreement through William L. Landsburg, its attorney and corporate officer.

The amended complaint sets forth two causes of action. Count I asserts that Stein breached its contract with Metro by terminating the contract without a justifiable cause. Count II alleges fraudulent misrepresentation. Plaintiff avers that Stein falsely represented its intention to fulfill its contractual obligation, which induced Metro to execute the Agreement. Plaintiff seeks relief in the form of liquidated damages, punitive damages, attorneys' fees and costs, and other relief deemed reasonable and just by the Court.

### III. Jurisdiction and Legal Standard

#### A. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000 and is between citizens of different states. Plaintiff is a New Jersey corporation with a principal place of business in New Jersey. Defendant is a

Pennsylvania corporation with a principal place of business in Pennsylvania. Venue is appropriate under 28 U.S.C. § 1391(a)(2) because the claim arose in this judicial district.

### B. Legal Standard

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

### IV. Parties' Contentions

Defendant argues that Count II of the amended complaint is an attempt to convert a breach of contract claim into a tort claim and is therefore barred by both the gist of the action doctrine and by the economic loss doctrine. Def's Br. at 3–4. First, Stein asserts that Metro is simply restating its breach of contract claim as a tort claim, which is precluded under the gist of the action doctrine. Id. at 4. Stein also contends that a promise of future action does not constitute fraud under Pennsylvania law. Id. at 4–5.

Plaintiff responds by arguing that its tort claim is rooted in the misrepresentations made by Stein that fraudulently induced execution of the Agreement. Pl's Resp. at 3. Plaintiff argues that because the tortious conduct occurred before the formation of a contract, the gist of the action doctrine does not apply. Id.

Defendant also argues that Metro is only seeking liquidated damages under the fraud count, and such damages are barred by the economic loss doctrine. Def's Br. at 5. Plaintiff asserts that the economic loss doctrine does not apply in this situation because the damages do not flow from Stein's breach of contract. Pl's Resp. at 4. Plaintiff also asserts that there is no claim for liquidated damages in the fraud count. Id. at 5.

**V.     Discussion**

The Pennsylvania Superior Court, noting the absence of any Pennsylvania Supreme Court decision on the gist of the action doctrine in fraud cases, chose to adopt federal court interpretations of Pennsylvania law and held that:

> [T]he doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contracts claim or the success of which is wholly dependant on the terms of a contract.

See eToll, Inc. v. Elias/Savion Adver., Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (internal citations and quotations omitted).

Metro's tort claim falls within many, if not all, of the categories set forth in eToll. Although the amended complaint alleges that Stein made the misrepresentations prior to executing the Agreement, Amended Complaint at 5, allegations concerning the timing of a fraudulent statement are insufficient on their own to avoid the invocation of the gist of the action doctrine. For the reasons that follow the Court holds that the fraudulent misrepresentation claim arises from the contract and therefore is not independent of the Agreement at issue in this case.

The Superior Court in eToll concluded "the gist of the action doctrine should apply to claims for fraud *in the performance of a contract*." Id. at 20 (emphasis added). Ultimately the

issue in this case is whether to characterize Defendant's alleged failure to pay as an unfulfilled promise which amounts to fraudulent inducement to enter a contract or as a breach of contractual terms and thus a breakdown in the performance of the contract.

Though non-precedential, the Third Circuit decision in <u>Williams v. Hilton Group, PLC</u>, 93 Fed. Appx. 384 (3d Cir. 2004), appears to address the matters at issue in the instant case. The <u>Williams</u> majority held that a claim of fraudulent inducement involving statements subsequently covered by the terms of the contract is barred by the gist of the action doctrine. <u>Id.</u> at 386–87.

The <u>Williams</u> majority cites to the undersigned's opinion in <u>Penn City Investments, Inc. v. Soltech, Inc.</u>, 2003 WL 22844210 (E.D. Pa. Nov. 25, 2003), in support of its conclusion that the fraud count should be dismissed under the gist of the action doctrine. In <u>Penn City</u>, this Court held that the "fraudulent inducement claim is tightly intertwined with its cause of action for breach of contract," <u>id.</u> at *3, concluding that "Soltech's fraud and negligence claims must be dismissed as to Penn City because they are either directly addressed by the contract, or so closely related to the contractual relationship, that the dispute between the parties should be resolved by exclusive reference to contractual principles." <u>Id.</u> at *4. According to the <u>Penn City</u> court, the relevant inquiry in applying the gist of the action doctrine to a claim of fraudulent inducement is to "determine if the pre-contractual statements concerned the specific duties that the parties later outlined in the contract. . . . [i]f so, the gist of the action doctrine precludes such statements from forming the basis of a tort cause of action." <u>Id.</u> at *3.[1]

---

[1] The undersigned is a coauthor of a recent discussion of the intersection of contract and tort law. <u>See</u> Michael M. Baylson, Kelly D. Eckel & Sandra A. Jeskie, <u>Contracts, in</u> 8 <u>Business and Commercial Litigation in Federal Courts</u> §§ 68:6–8, at 330–38 (Robert L. Haig ed., 2d ed. 2005). The piece explains the development of the gist of the action doctrine and reviews its application by the courts. <u>Id.</u> § 68:8, at 335–38.

It is important to note, however, that many of the cases invoking the gist of the action in dismissing fraud claims have done so at the summary judgment stage. See Williams, 93 Fed. Appx. at 386–87; Penn City, 2003 WL 22844210 , at *4; Galdieri v. The Monsanto Group, 245 F. Supp. 2d 636, 650 (E.D. Pa. 2002) (holding that the employment contract between the parties explicitly addressed the issue of restrictions on company stock and that the plaintiffs could not bootstrap a fraud claim could not be bootstrapped to a contract claim merely by adding the words "fraudulently induced"); Werner Kammann Maschinenfabrik, GmbH v. Max Levy Autograph, Inc., 2002 WL 126634, at **6–7 (E.D. Pa. Jan. 31, 2002) (dismissing fraudulent misrepresentation claim because defendant's pre-contractual promise was directly addressed by the contract and therefore barred under the gist of the action doctrine).

As for dismissal at the 12(b)(6) stage, there is precedent in this Court for invocation of the gist of the action doctrine at that stage of the litigation in a 12(b)(6) dismissal. In Owen J. Roberts School District v. HTE, Inc., 2003 WL 735098 (E.D. Pa. Feb. 28, 2003), the court granted a motion to dismiss after finding that the gist of the action doctrine barred plaintiff's fraud claim because defendant's pre-contractual promise to provide plaintiff with certain software was addressed by the contract. Id. at *5. The HTE court held that "the [gist of the action] doctrine does not categorically bar or exempt . . . a [fraudulent inducement] claim, but it does preclude the claim if the fraudulent statement became the basis for a contractual duty." Id. at *3.

The HTE court also examined two cases from this Court which permitted a fraud in the inducement claim to proceed concurrently with a breach of contract claim. In both of these cases, Asbury Automotive Group LLC v. Chrysler Insurance Co., 2002 WL 15925 (E.D. Pa. Jan. 7, 2002) and American Guaranty & Liability Insurance Co. v. Fojanini, 90 F. Supp. 2d 615 (E.D.

Pa. 2000), the allegedly fraudulent behavior involved representations about issues *not* addressed by the parties' contracts. See HTE, 2003 WL 735098, at *4.

Turning to the facts of this case, the Court concludes the cause of action in Count II lies in contract, since the duty involved, providing the $167,500 promised, was clearly set forth in the Agreement and not based on some larger social policy. The facts alleged in the Amended Complaint are very simple. There was a contract for an asset sale and one party did not pay. Because the pre-contractual statements upon which Plaintiff bases its claim for fraudulent inducement were later outlined in the contract, the Court holds that the gist of the action doctrine applies and that contractual principles should control. Because the facts of this case as set forth in the Amended Complaint are very simple and do not appear to require much in the way of discovery to unpack, the Court has determined that elimination of the fraud claim at the 12(b)(6) stage is appropriate.

The fraudulent misrepresentation alleged in the Amended Complaint only amounted to deficient performance of the terms of the Agreement.[2] Defendant's alleged failure to make the $167,500 payment is at the heart of Count I, and the gist of the action thus bars Metro's fraudulent inducement claim. Therefore, Count II of the Amended Complaint sounds in contract not in tort and will be dismissed. Because Defendant has been successful in its argument that the claim should be dismissed under the gist of the action test, the Court will not address the merits of its arguments concerning the economic loss doctrine.

---

[2] Although it need not decide the issue, the Court doubts that Plaintiff's fraud allegations meet the requirements of F.R. Civ. P. 9(b).

**VI.     Conclusion**

The Court concludes that the gist of the action doctrine bars Plaintiff's fraudulent misrepresentation claim. Defendant's Motion to Dismiss will accordingly be granted and Count II will be dismissed with prejudice.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| METRO AUTO SALES | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| ALFRED STEIN, INC. | : | NO. 05-4721 |
| Defendant. | : | |

### ORDER

AND NOW, this 30th day of January, 2006, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 5) is GRANTED with prejudice.

BY THE COURT:

s/ Michael M. Baylson

**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL\05-4721 Metro Auto Sales v. Stein\05-4721 Metro MTD.wpd